UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
                                                                      :
EYAL R.D. Corp.,                                                      :
                                                                      :
                                        Plaintiff,                   :
                                                                      :
            -against-                                                 :
                                                                      :          07 Civ. 13 (CSH)
                                                                      :
JEWELEX New York, Ltd.,                                               :
                                                                      :          MEMORANDUM OPINION
                                        Defendant.                   :          AND ORDER
                                                                      :
                                                                      :
-----------------------------------------------------------------------x

HAIGHT, Senior District Judge:

         Plaintiff Eyal R.D. Corp. ("Eyal") filed this action pursuant to the Copyright Act of 1976,

17 U.S.C. §§ 101 *et seq*., alleging that defendant Jewelex New York Ltd. ("Jewelex New York" or

sometimes "Jewelex") is manufacturing and selling jewelry which infringes on Eyal's copyrighted

jewelry design.  Following discovery, Jewelex moves for summary judgment pursuant to Federal

Rule of Civil Procedure 56.

## I. PARTIES AND JURISDICTION

         Plaintiff Eyal is a family-owned New York corporation engaged in the business of

developing, manufacturing and selling jewelry.  Pl.'s Compl. ¶ 7.  Albert Kallati founded Eyal in

1984 and is the corporation's sole shareholder.  Reout Kallati, Albert's daughter, and Shoshana

Kallati, Albert's wife, also work in the business.  In her declaration, Reout Kallati described her

responsibilities at Eyal:

> Recently we laid off all our employees and now the New York office is my
> responsibility in every aspect.  Presently, I manage the accounts payable and
> receivable, sales to current and new clients, as well as shipping and handling,
> invoicing, and other general office work.  I also review and draft contracts

and file copyright registrations.

Reout Kallati (hereinafter "R. Kall.") Decl. ¶ 7. Reout also states that her mother Shoshana Kallati "helped [her] father build the company and is very active in the business." R. Kall. Decl. ¶ 4.

Defendant Jewelex New York is a New York corporation engaged in the business of designing, creating, manufacturing, marketing and selling gold and diamond jewelry. It is affiliated with Jewelex India Pvt. Ltd. ("Jewelex India"), a corporation existing under the laws of the Republic of India, which designs jewelry for sale by Jewelex New York. Declaration of Afshan Adlakha ("Adlakha Decl.") ¶ 1.

Subject matter jurisdiction over the case is conferred by 28 U.S.C. § 1338(a), which gives federal courts original jurisdiction over civil actions arising under the Copyright Act and 28 U.S.C. § 1367(a), granting district courts supplemental jurisdiction over state and common law claims that form part of the same case or controversy as the underlying federal action. This Court unquestionably has personal jurisdiction over defendant Jewelex New York. Venue lies in the Southern District of New York under 28 U.S.C. §§ 1391(b) and (c), because the defendant resides therein and a substantial part of the events giving rise to this action occurred in this district.

## II. BACKGROUND

Eyal states that it obtained a Certificate of Registration VA 1-386-584 ("the 584 registration") for a collection comprised of 12 jewelry designs, "each piece having been created and designed by Eyal, through employees creating the designs as a work for hire under the supervision of Albert Kallati...." Pl.'s Mem. in Opp'n at 2. The individual pieces comprising the collection were chosen by Reout Kallati, "each design bearing the Floating BIG LOOK concept." R. Kall.

Decl. ¶ 10.

A copy of the 584 registration is attached to plaintiff's complaint. It identifies 2006 as the "year in which the creation of this work was completed" and identifies the author as Eyal. The "date and nation of first publication" is listed as "September 30, 2006" and "USA," respectively. The sections concerning derivative work have been left blank; no pre - existing materials were identified and the section concerning "material added to this work" was left blank. The 584 registration certificate is dated December 1, 2006. A deposit copy page is attached to it. The deposit copy page depicts 12 pieces of jewelry designs. Eyal asserts through the declarations and depositions of its witnesses that each piece was created and designed by Eyal, through employees creating the designs for hire. Ten of the 12 pieces depicted on the deposit copy page are rings. The other two appear to be a pendant and an earring. Eyal's claim against Jewelex for infringement relates solely to a single band ring depicted in the lower right hand corner of the deposit cover page ("the Eyal Single Band Ring" or "the Eyal Ring"). The Eyal Single Band Ring is depicted on the deposit copy page in close proximity to a wider ring with a large centered set stone, which the briefs for Jewelex refer to as "the Eyal Engagement Ring." Jewelex suggests that the Eyal Single Band Ring and the Eyal Engagement Ring form part of a set that Eyal sold together. Eyal asserts that the Eyal Single Band Ring is not sold as part of a two-piece set.

Reout Kallati, who prepared and submitted the 584 Registration, asserts that she selected 12 specific pieces for what she called "the Floating BIG LOOK collection" for sale by Fred Meyer Jewelers, a jewelry retailer. Eyal claims that the collection was completed in 2006, and that is why 2006 is the date listed on the 584 registration.

In support of its opposition to Jewelex's motion, Eyal submits the declaration of Albert

3

Kallati, Eyal's founder. Kallati states that in 1995 he designed a channel setting band ring for Eyal which juxtaposes princess-cut and baguette-cut diamonds in an alternating pattern. This was the Eyal Single Band Ring. *See* Albert Kallati (A. Kall.) Decl. ¶ 3-5. As noted, the Eyal Single Band Ring is one of the jewelry designs included in the 584 registration. The name "Kallati" or the initials "E.Y." and the gold quantity are engraved on the inner surface of the band.

In 2006, Albert Kallati visited a Fred Meyer Jewelers retail store that sells the Eyal Single Band Ring. There he claims that he saw for the first time Jewelex rings "directly adjacent" to the Eyal band ring, which he says "targeted the Eyal ring, not only in design, but also in price." A. Kall. Decl. ¶ 11. He alleges that Jewelex's rings are "substantially similar, if not identical to the Eyal Ring, and were priced at exactly half the price of each of the corresponding weight varieties of the Eyal Ring." *Id*. Eyal claims Jewelex intentionally copied the Eyal Single Band Ring "for the sole purpose of maximizing its profits and beating out its smaller competitor, Eyal." Pl.'s Mem. in Opp'n at 3.

Counsel for Eyal contacted Fred Meyer Jewelers and Whitehall Jewelers, another jewelry retailer, by letters dated on or about January 5, 2007and June 14, 2007 demanding that they cease and desist from selling the alleged infringing Jewelex rings. Jewelex claims that Albert and Reout Kallati visited the offices of Fred Meyer Jewelers and threatened Fred Meyer Jewelers buyers with a lawsuit for infringement of the copyright in suit if they did not stop selling the Jewelex rings. Jewelex claims that Fred Meyer returned the alleged infringing Jewelex rings it had previously purchased after receipt of the cease and desist letter and alleged threats. *See* Atul Kothari Affirmation ¶¶ 7- 13.

In support of its motion for summary judgment, Jewelex New York submits the declaration

of Afshan Adlakha, Jewelex India's Director of Product Development. Adlakha states that Jewelex India employees created the Jewelex ring that is the subject of this litigation under her direction and supervision in 1999 and delivered the ring to Jewelex New York on February 20, 2000. Adlakha Decl. ¶ 7. Adlakha identifies Exhibit H of the Rozsa declaration[1] as a "true and correct copy of a design printout showing that the Jewelex rings were created in 1999." *Id.* Adlakha states that she "was not aware of any comparable ring sold by Eyal or any other company in the world at the time of creation of the jewelry designs which Eyal is accusing of infringing its copyright." Adlakha Decl. ¶ 5.

Adlakha further asserts that the creation of the Jewelex ring was "simply a natural evolution of the channel bands that had been created and developed for Jewelex dating back to 1995." She states:

> Attached as Exhibit N to the Rozsa [declaration] is a printout showing development of Jewelex Rings with a channel round series launched in 1997, the channel princess series launched in 1998, the channel baguette series launched in 1997, the round baguette series launched in 1999, and the princess baguette series launched in 1999. The second page shows further development of anniversary bands with numerous variations of combinations of channels sets, including princess baguette settings and various types of designs and combinations.

Adlakha Decl. ¶ 12.

To further support her claim that Jewelex India was selling channel bands since 1995 and that Jewelex India's employees created sketches of "princess baguette combination and channels" under Adlkha's "direction and control" in 1999, Adlakha points to the following evidence in the record: copies of "invoices and accompanying pictures reflecting jewelry that was shipped from Jewelex

---

[1] Declaration of Thomas I. Rozsa, Esq., one of the attorneys representing Jewelex ("Rozsa Decl.").

India to Jewelex from 1995 to 1997," Rozsa Decl. Ex. I; "copies of the actual designs themselves showing rings with channels set with stones, including round, square, and princess baguette stones," Rozsa Decl. Ex. J; "copies of scans of the original design sketches of [round] channel bands" which "were made by [Jewelex India] employees in 1998," Rozsa Decl. Ex. K; and "copies of design sketches made by Jewelex India employees showing the round/baguette, princess baguette styles created in 1999," Rozsa Decl. Ex. L. *See* Adlakha Decl. ¶¶ 8-10.

Adlakha concludes her declaration with the assertion that the "concept of having channel set diamonds (round, princess, baguette) is very old in the art and dates back to the 1800's." Adlakha Decl. ¶ 13. Her declaration proffers "photographs of styles of old pieces auctioned by Sotheby's and Christie's" which she purports prove that "the channel setting has been done from the 1800's in princess rounds and baguettes and also in combination of different colored stones." *See* Adlakha Decl. Ex. 2.

On January 3, 2007, Eyal filed a one-count complaint against Jewelex alleging that Jewelex's sale of certain diamond rings constitutes copyright infringement of the 584 registration. On February 5, 2007, Jewelex answered the complaint, denying all of the substantive allegations set forth therein, and asserting affirmative defenses and counterclaims alleging invalidity of copyright and non-infringement of copyright.

Jewelex filed an amended answer and counterclaims on September 27, 2007. The counterclaims comprise Counts I-X. Count I seeks a declaration of copyright invalidity. Count II seeks a declaration of non-infringement of copyright. Count III is a claim for independent derivation. Count IV states a claim for intentional interference with current and prospective business advantage. Count V states a claim for negligent interference with current and prospective business advantage.

Count VI alleges unfair competition. Count VII states a claim for common law damage to business reputation. Court VIII seeks injunctive relief under New York General Business Law § 360-l. Count IX states a claim for injurious falsehood. Count X alleges interference with contractual relations.

Jewex now moves under Rule 56 for summary judgment dismissing Eyal's complaint, asserting in the alternative that (1) Eyal's copyright registration is invalid; (2) Jewelex did not have access to Eyal's ring and the Jewelex rings are not substantially similar to the Eyal Ring; and (3) Eyal's copyright registration is unenforceable because of Eyal's unreasonable delay in commencing this action.

Eyal cross-moves under Rule 12(c) for judgment on the pleadings dismissing Counts IV-X. That motion is decided in a separate opinion filed concurrently with this one, which resolves Jewelex's motion for summary judgment.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) ("[T]he burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists." (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975))). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962) (per curiam)), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)). Although all facts and inferences therefrom are to be construed in favor of the party oppposing the motion, *Harlen Assocs. v. Village of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001), that party must raise more than just a "metaphysical doubt" as to a material fact. *Matsushita*, 475 U.S. at 586. "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen*, 273 F.3d at 499. Accordingly, if the "evidence favoring the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). *See also Gallo*, 22 F.3d at 1223-24 (summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case.") (citations omitted).

## IV. DISCUSSION

### A.    Validity of Plaintiff's Copyright Registration

Jewelex contends that Eyal's 584 registration is invalid, a proposition which if sound would deprive this court of subject matter jurisdiction over the case.

Jewelex asserts several grounds for invalidity. I will examine them in turn. Preliminarily, it should be noted that to establish a copyright infringement cause of action a plaintiff must establish both (1) ownership of a valid copyright and (2) infringement of the copyright on the part of the defendant, *Yurman Design Inc. V. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001); and in the absence of a valid copyright registration the Court lacks subject matter jurisdiction over an action for infringement. *See Morris v. Business Concepts, Inc.,* 259 F.3d 65, 68 (2d Cir. 2001); *Yurman Design Inc. v. Chaindom Enter., Inc.*, No. 99 Civ 9037 (JFK), 1999 WL 1075942, at *5 (S.D.N.Y. Nov. 29, 1999) (quoting *Tuff-n-Rumble Management, Inc. v. Sugarhill Music Publ'g Inc.*, 49 F. Supp. 2d 673, 677 (S.D.N.Y. 1999)). That lack of subject matter jurisdiction flows from the provision in 17 U.S.C. § 411(a) that "no action for infringement of the copyright in any work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."

I turn to the several bases Jewelex asserts to support the proposition that Eyal's copyright registration is invalid.

1. Whether the Eyal Band Ring is a Derivative Work or an Individual Work Within a Group Registration

Jewelex argues that Eyal improperly characterized the Eyal Single Band Ring and another jewelry design Jewelex designates "the Eyal engagement ring" as a derivative work in its application for registration of the copyright. Eyal responds that it has categorized the Eyal Single Band Ring as an individual work within a group registration, not as a derivative work.

The Copyright Act defines a derivative work as:

> a work based upon one or more pre-existing works, such as a translation, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions,

> annotations, elaborations, or other modifications which, as a whole, represent
> an original work of authorship ....

17 U.S.C. § 101. Thus, "a derivative work must incorporate a substantial element of a preexisting work of authorship and recast, transform, or adapt those elements." *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 305 (S.D.N.Y. 2000). Jewelex argues that the mere two-ring combination depicted on the deposit copy page attached to the 584 registration cannot qualify as a derivative work. *See* Rosza Decl. Ex. A.

As noted, Eyal acknowledges that the Eyal Single Band ring is not a derivative work and states that it did not intend to fit the ring within that category. It also rejects Jewelex's claim that the Eyal Ring is part of a two-ring combination. Rather, Eyal claims it is an individual design that is part of a group registration. In its opposition brief, Eyal insists that it "is not claiming to have created a derivative work of the Eyal ring by combining it with another ring, is not seeking copyright protection for these two rings as a combination, and is not relying on any protection afforded the supposed two-ring combination for protection of the individual ring." Pl.'s Mem. in Opp'n at 14. Instead, Eyal states that it is "seeking to enforce the exclusive copyright protection afforded to the Eyal ring" as an individual work within a group registration, *id.*, which is permissible under the law. *See Carell v. The Shubert Org.*, 104 F.Supp. 2d 236, 248 (S.D.N.Y. 2000) (holding that group registration does not prevent a copyright owner from bringing a claim for infringement as to individual designs within the group); *see also Woods v. Universal City Studios, Inc.*, 920 F. Supp. 62, 64 (S.D.N.Y. 1996) (registration of copyright for collective work satisfies requirements of 17 U.S.C. § 411(a) to bring copyright infringement action based on constituent parts where owner of copyright for collective work also owns constituent parts).

Jewelex seems to be arguing that the close positioning of the rings on the deposit copy page provides sufficient evidence to support its claim that Eyal intended to characterize the ring pair as a derivative work. However, it provides no authority in support of that position and the Court's research reveals no support for it. In any event, a review of the 584 registration as a whole supports Eyal's basic contention: the Eyal Single Band Ring is an individual design that is part of a group registration. While the Eyal Ring appears to be paired with the Eyal engagement ring on the deposit copy, other jewelry designs were also included on the page. Furthermore, Reout Kallati testified that there was no specific reason why she positioned the jewelry designs in the manner they appear on the deposit copy page. *See* R. Kall. Dep. at 35, l. 3- l. 7. Jewelex has offered no evidence to contradict that assertion.

The most that can be said for Jewelex is that it has identified a relevant factual issue, but that issue is for the triers of the facts, and cannot support a summary disposition.

2.     The Requirement of Originality

Jewelex challenges the validity of Eyal's copyright, claiming that the Eyal Single Band Ring lacks originality, "the one pervading prerequisite to copyright protection." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 2.05 (2007) ("Nimmer"). Specifically, Jewelex argues that Eyal cannot claim copyright in the Eyal Ring because its design–the concept of round band with a channel to retain stones–is commonplace in the industry and has been used in designing rings since the 1800s. Def's Mem. at 19. Jewelex also claims that "the channel set princess baguette designs were created long before Eyal's alleged creation." *Id*.

Originality does not demand "invention in the sense of striking uniqueness, ingeniousness, or novelty . . . . Originality means that the work owes its creation to the author and this in turn means

that the work must not consist of actual copying." *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) (citations omitted). The Second Circuit has instructed that "all that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.'" Originality in this context 'means little more than a prohibition of actual copying.'" *Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99, 102-03 (2d Cir. 1951) (citations omitted).

Eyal correctly points out that Jewelex improperly focuses on the Eyal Single Band Ring's component parts in arguing that the jewelry design is not entitled to copyright protection. Eyal cites *Yurman Design, Inc. v. PAJ, Inc.*, 93 F. Supp. 2d 449, 457 (S.D.N.Y. 2000), for that proposition. In that case, Judge Sweet rejected the alleged infringer's argument that the plaintiff's jewelry designs were not original because of basic, unoriginal design elements:

> To accept PAJ's argument that Yurman's pieces of jewelry are merely unprotectable agglomerations of basic design elements already within the public domain would be akin to accepting the position that every song is merely a collection of basic notes, every painting a derivative work of color and stroke, and every novel merely an unprotected jumble of words."

*Id*.; *See also Knitwaves, Inc. v. Lollytogs, Ltd.* 71 F.3d 996, 1003 (2d Cir.1995) (a work may be copyrightable even though it is entirely a compilation of unprotectible elements); *Weindling Intern., Corp. v. Kobi Katz, Inc.*, No. 00 Civ 2022 (JSR), 2000 WL 1458788, *4 (S.D.N.Y. September 29, 2000) (finding that copyright protection in jewelry design "applies only to the unique combination and arrangement of otherwise uncopyrightable elements into the particular design that gives the ... ring its distinctive feel").

In its brief Eyal outlines the combination and arrangement of the Eyal ring design that it claims makes it an original creation worthy of copyright protection:

12

> [I]ts single band ring juxtaposing Baguette cut diamonds with Princess cut diamonds, in an alternating pattern, along with the particular thickness chosen for the rim of the ring, the particular width chosen, the fact that the channel does not extend all the way around the ring, but instead is limited to the front part of the ring, the fact that the jewels are set into and submerged into the ring in such a way that there are no gaps between the stones, and there are no walls visibly dividing the stones from one another....

Pl.'s Mot. in Opp'n at 24. Eyal maintains that no comparable ring existed in the industry when Eyal created the ring.

Eyal has presented sufficient evidence to create a genuine issue of material fact as to whether the Eyal ring possesses the requisite originality. A review of the case law reveals that the "quantum of originality necessary to invoke copyright protection is very small." *Diamond Direct, LLC v. Star Diamond Group, Inc.*, 116 F.Supp. 2d 525, 528-29 (S.D.N.Y. 2000). *See Weindling*, 2000 WL 1458788, at *4 ("even if the creative spark behind a commercial jewelry design is more like a flickering match than a bolt a lightning, it nonetheless is entitled to copyright protection"). Further, I find Eyal's argument persuasive that Jewelex focuses on the Eyal's ring component parts rather than the jewelry design as a whole.

3.     Errors, Misstatements and Omissions in the Copyright Registration

Jewelex next alleges that Eyal does not hold a valid copyright in the jewelry design at issue in this case because the registration application fails to comply with the requirements set forth in 17 U.S.C. §§ 409 (7) - (9) and (11).

The various clauses of § 409 specify the information to be included in an application for copyright registration. Section 409, in relevant part, states:

> The application for copyright registration shall be made on a form prescribed by the Registrar of Copyrights and shall include...
> (7) the year in which creation of the work was completed;

> (8) if the work has been published, the date and nation of its first publication;
> (9) in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered;
> (11) any other information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright.

17 U.S.C. § 409.

Jewelex alleges that the 584 registration includes an improper year of creation and date of publication, 2006 rather than 1997. Jewelex also claims that Eyal failed to disclose that the collection contains preexisting material, failed to identify any incorporated works or additional material that predated the 2006 date of creation and first publication and failed to specify the relationship of the individual works, all in contravention of § 409.

I first address the principles that govern the issue of whether errors, misstatements and omissions in a copyright application invalidate the registration, and then consider Eyal's response to Jewelex's argument of invalidity.

### i. Relatedness

Jewelex argues that Eyal failed to specify the correlation between the jewelry designs within the collection as required by 17 U.S.C. § 408(c) of the Copyright Act, and therefore the copyright is invalid. The Act permits registration of multiple related works under a single copyright application. 17 U.S.C. § 408(c)(2) provides:

> (2) Without prejudice to the general authority provided under clause (1), the Register of Copyrights shall establish regulations specifically permitting a single registration for a group of works by the same individual author, all first published as contributions to periodicals, including newspapers, within a twelve-month period, on the basis of a single deposit, application, and registration fee, under the following conditions:

(A) if the deposit consists of one copy of the entire issue of the periodical, or of the entire section in the case of a newspaper, in which each contribution was first published; and

(B) if the application identifies each work separately, including the periodical containing it and its date of first publication.

17 U.S.C. § 408(c). Single registration of multiple works was established in the 1976 amendment to § 408(c) in order to encourage authors to seek copyright registration. The House Report to the 1976 amendment states:

> The provision empowering the Register to allow a number of related works to be registered together as a group represents a needed and important liberalization of the law now in effect. At present the requirement for separate registrations where related works or parts of a work are published separately has created administrative problems and has resulted in unnecessary burdens and expenses on authors and other copyright owners. In a number of cases the technical necessity for separate applications and fees has caused copyright owners to forego copyright altogether. Examples of cases where these undesirable and unnecessary results could be avoided by allowing a single registration include … *a group of related jewelry designs* ….

House Report on the 1976 Amendment of the Copyright Act, H.R. Rep. No. 1476, 94th Cong., 1st Sess. (1976), printed in 17 U.S.C.A. § 408 at 733 (West 2005) (emphasis added).

The question of whether copyrighted designs are sufficiently related to qualify for group registration is generally held to be for the trier of the facts. In *Yurman Design, Inc. v. PAJ, Inc.*, 93 F. Supp. 2d at 456, Judge Sweet instructed the jury that

> in order for multiple jewelry designs to be properly registered under a single copyright application, "the individual designs must be sufficiently related to qualify for group registration--and that the jury was to consider whether the designs are variations on the same basic design, comparing size, shape, proportions and the like, whether the designs have the same basic distinguishing characteristics, and whether the designs bear a resemblance to one another.

15

As authority for that instruction, Judge Sweet cited his prior opinion in *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841, 1997 WL 639037 (S.D.N.Y. Oct. 14, 1997), at *11:

> Like the dolls in *Original Appalachina*, Basha's baby shoe pendants are marketed in a single line. Basha consistently displays the pendants in a group in his shop window and advertisements. The pendants are variations on the same basic design; they are related by size, shape, proportion, use of bows or straps, and ornamentation with diamonds or french enamel. Thus, the pendants satisfy the relatedness requirement of § 408(c), and, as in *Original Appalachian*, this relatedness in appearance permits single registration of multiple works.

The case to which Judge Sweet referred in *Benham* is *Original Appalachian Artworks v. Toy Loft*, 489 F. Supp. 174 (N.D. Ga. 1980), *aff'd*, 684 F.2d 821 (11th Cir. 1982). Plaintiff brought an infringement action regarding a group of soft sculpture dolls described in a single copyright registration under the title "The Little People." Like Basha's baby-shoe pendants, the assorted dolls were variations on the same basic design. Although they were sold individually, the dolls were marketed as a single line, and plaintiff shipped its dolls with written suggestions as to the manner in which the dolls should be displayed and sold. The district court consolidated plaintiff's motion for a preliminary injunction with trial on the merits and heard the case without a jury. The court concluded that defendant had infringed plaintiff's copyright, and added: "In reaching this conclusion, the court notes that the plaintiff's copyright registration number VA 35-804 is sufficient to cover all of the differently-styled "Little People" that the plaintiff is presently manufacturing." *Id*. at 180.

*Bruce & Company v. B.H. MultiCom. Corp.*, 964 F.Supp. 265 (N.D.Ill. 1997), is instructive. Defendant in an infringement action moved for summary judgment on the ground that plaintiff had

defectively registered a group of unrelated rings in a single copyright application. The court agreed that the identifying materials submitted with the registration depicted "a conglomeration of ring designs which bear no resemblance to each other." *Id*. at 268. Plaintiff countered that the relatedness requirement set forth in 17 U.S.C. § 408(c) was satisfied because the works were included in a "single unit of publication" whereby the rings were offered for sale together as a line and appear together in their marketing material. The court denied defendant's motion for summary judgment, reasoning that "[w]hether the rings are sold separately or together as a line and whether that is sufficient" presented an issue of material fact requiring trial. *Id*.

Jewelex argues that the 584 registration is silent about the distinctive, common features that identify the group of jewelry Eyal registered under a single application. Def.'s Mem. at 14. Instead, it claims the designs were independently created by different individuals, were not created at the same time, were randomly selected from different design books prepared at different times and have no relationship to each other apart from Reout Kallati's belief that the jewelry items might have been sold to a retailer, Fred Meyer during the year 2006. *Id*. at 4. Jewelex therefore concludes that the jewelry designs depicted in the registration "clearly have nothing whatsoever to do with each other" and that "there is no credibility to state that the designs set forth in the deposit copy page are related." Reply Mem. at 9.

Eyal responds that it "easily meets the low threshold required for relatedness under [§ 408(c)] as the jewelry designs in the 584 registration are part of the "Floating BIG LOOK collection," that it marketed and sold to Fred Meyer, a retail jewelry store. Pl.'s Mem. in Opp'n at 9.

Jewelex cites *Tabra Inc. v. Treasures Paradise Designs, Inc.*, No. C 90-0155 MHP, 1990 WL 126187 (N.D. Cal. April 24,1990), for the proposition that a copyright should be declared invalid

when a group of unrelated jewelry designs is registered in a single application. The case arose on plaintiff's motion for a preliminary injunction against defendant's alleged infringement. Plaintiff in *Tabra* included 250 jewelry designs in six separate copyright registrations, grouped by year only, without any attempt to connect the jewelry by distinguishing characteristics. The court denied plaintiff's motion for injunctive relief, reasoning: "Each registration covers several designs, some as many as thirty to fifty and one over ninety. The jewelry pieces covered by each of these registrations were a conglomeration of designs and do not necessarily bear any resemblance to each other. The only apparent relationship is that many pieces are earrings and have a primitive look." 1990 WL 126187, at *4. I do not find this case to be particularly instructive in the case at bar.

Moreover, at least one court in this circuit has noted that the failure to include related jewelry designs in a single copyright application may be insufficient to invalidate the copyright registration. *See Yurman v. PAJ, Inc.*, 93 F. Supp. 2d at 456 n.3 (citing *Hamil America Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)) (holding that a jury could reasonably find infringement of certain individual jewelry designs within a group of designs registered under a single copyright, and that infringement of an individual design would still be possible even if the designs had improperly been registered as a group).

In the case at bar, I conclude without difficulty that genuine issues of material fact exist as to whether the jewelry designs in the 584 registration are sufficiently related to justify their inclusion in a single registration. The questions that Judge Sweet instructed his jury to answer in *Yurman Design* must be answered by the jury in this case. These factual issues preclude Jewelex from obtaining summary judgment on this asserted basis of copyright registration invalidity.

I note, however, that Jewelex correctly points out that Eyal for the first time in its opposition

brief terms the jewelry collection at issue, "the Floating BIG LOOK collection." In her deposition, Roeut Kallati testified that she prepared the application for the 584 registration and her decision to include the designs on the deposit copy page was based on her belief that those specific designs were going to be sold to Fred Meyer Jewelers in 2006. *See* R. Kall. Dep. pp. 33-39. During Albert Kallati's deposition, counsel for Jewelex asked him how the rings on the deposit copy page were related. Albert Kallati responded, "I don't know." *See* A. Kall. Dep. p. 56. Thus, neither Reout nor Albert Kallati indicated during their respective depositions that the jewelry designs were related because they were all part of "the Floating BIG LOOK collection." Additionally, Eyal has not provided any information which may shed light on the concept of the "Floating BIG LOOK collection." If Jewelex is not entitled to summary judgment on other grounds, the factual issues raised by the genesis of Eyal's "collection," as well as the marketing arrangements and other relevant facts suggested by the cited cases, will be explored at trial.

    ii. <u>Creation/Publication Date</u>

Eyal emphasizes that the 584 registration is for a collection of jewelry that was completed in 2006, not for the individual Eyal Ring which is the subject of this litigation. Eyal asserts that "[a]lthough individual pieces within the collection were created and/or published prior to the copyright registration, the *collection* of works was completed in 2006, which date is correctly listed on the copyright registration." Pl.'s Mem. in Opp'n at 7-8 (emphasis in original).

    Jewelex rejects Eyal's claim that the collection was completed in 2006. It says that such a claim "lacks foundation" and is "absolutely unsupported." Def.'s Reply Br. at 8, 10. Jewelex further argues that Albert Kallati's testimony contradicts Eyal's claim because he stated that "he did not know who created many of the individual pieces of jewelry and did not know when the

individual pieces of jewelry that are placed in the deposit copy of the Registration were created."
Def.'s Reply Br. at 10 (quoting A. Kall. Dep. p. 46, l. 23 to p. 70, l. 20).

I construe these arguments as posing a question of law: Whether an applicant for copyright registration of an identifiable collection of objects may validly include the date of the first publication of the collective work as a whole, as opposed to the individual works which comprise the collection. The parties do not cite any case law addressing this specific issue and the copyright statue is silent on this question.

While the copyright statute does not answer this question directly, the statute does provide in the notice provision that notice placed on copies of a derivative or collective work need only specify the year of first publication of such work. *See* 17 U.S.C. § 401 ("in the case of compilations or derivative works incorporating previously published material, the year date of first publication is sufficient"). A leading treatise on copyright counsels that this requirement "will serve to protect not only the original matter contained in such work but also any pre-existing work that may be incorporated therein even if such pre-existing work has been previously published." 2 *Nimmer on Copyright,* § 7.08 [A][1].

Notably, § 401 also includes a statutory exception to the rule: "[t]he year date may be omitted where a pictorial, graphic, or sculptural work, with accompanying text matter, if any, is reproduced in or on greeting cards, postcards, stationery, *jewelry*, dolls, toys, or any useful articles...." 17 U.S.C. § 401 (emphasis added).

Whether Eyal did not complete an identifiable collection of jewelry which included the Eyal Single Band Ring until 2006 poses genuine issues as to material facts which preclude summary judgment. Assuming that proof at trial establishes those facts, I hold as a matter of law that 2006

is a statutorily acceptable date for Eyal to include in its single copyright registration.  Accordingly, questions in respect of the creation and publication dates do not form the basis for a summary disposition in Jewelex's favor.

### iii. Pre-Existing and/or Published Individual Work

As an additional ground for invalidity, Jewelex claims that Eyal incorrectly portrays the collection in the 584 registration as an original work of authorship that was created and published in 2006.  Jewelex argues that, to the contrary, the group includes jewelry designs that were created and published prior to 2006.  Therefore, according to Jewelex, the group is a "compilation" within the meaning of the copyright statute and "Eyal should have noted in the application that the work includes preexisting material, designating the date of creation and/or publication of each and every design and any other information that might have influenced the duration of copyright applicable to a particular design."  Def.'s Mem. at 15.

Eyal responds that when registering a collection there is no requirement that pre-existing or published individual works be identified.  Pl.'s Mem. in Opp'n at 12.  Instead, according to Eyal, the application for copyright registration requires the identification of pre-existing or published individual works "only [for] derivative works."  Eyal maintains that "it intended to file and did file, a registration for a collection, not a derivative work" and therefore it correctly omitted information regarding pre-existing works.  *Id.*

On this question, I agree with Eyal and hold as a matter of law that the application requires identification of pre-existing or published individual works only for derivative works.  17 U.S.C. § 101 defines a collective work as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are

assembled into a collective whole." Section 101 defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term 'compilation' includes collective works."

Section 6(a) of Form VA, the form used for "copyright registration of published or unpublished works of the visual arts" entitled "Derivative Work or Compilation," instructs the applicant to "[c]omplete space 6 if this work is a 'changed version,' 'compilation,' or 'derivative work,' and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain." *See* Pl.'s Opp'n Br. Ex. D.

The plain language of § 101 makes clear that a collective work is considered a form of a "compilation." *See* § 101 (" the term 'compilation' includes collective works"). Thus, if the Court were to adapt Eyal's theory of the case, the collection of jewelry designs, the "collective work" in this case, would fall under the rubric of a "compilation" within the meaning of the statute and section 6(a) of Form VA does not apply. *See* Pl.'s Mem. in Opp'n Ex. D (Form VA's "line by line instructions" state "do not complete [section 6a] for compilations").

iv. <u>Were the Alleged Errors Misstatements and Omissions Based on Fraud?</u>

Assuming *arguendo* that Eyal's registration application contained errors, misstatements, or omissions in one or more of the respects urged by Jewelex, that does not resolve the ultimate question before the Court.

The ultimate question the Court must resolve is whether an error, misstatement or omission in an application for registration invalidates the copyright. Courts considering the issue have generally followed a liberal approach to upholding erroneous registration applications. For example,

the Second Circuit stated in *Eckes v. Card Prices Update*, 736 F.2d 859, 861 (2d Cir. 1984), stated that "only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid and thus incapable of supporting an infringement action." Nimmer's treatise also supports this view. Professor Nimmer writes:

> [A] misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action. However, this conclusion pertains only to the extent that the work in question would still have been eligible for copyright had the registration application contained a correct statement of the facts. If the claimant wilfully misstates or fails to state a fact that, if known, might have caused the Copyright Office to reject the application, then the registration may be ruled invalid.

2 Nimmer on Copyright, § 7.20 [A](footnotes omitted).

In this case, notwithstanding Jewelex's conclusory assertions, there is no evidence in the record to support a finding that Reout Kallati intended to defraud the Copyright Office when she completed the application for copyright registration. Additionally, Jewelex has not submitted evidence to show that had Eyal disclosed more information or corrected its alleged errors and misstatements, the Copyright Office would have rejected its application. Accordingly, I conclude that even if (contrary to the Court's analyses *supra*) Jewelex had shown beyond any factual dispute the existence of defects in Eyal's copyright registration, I would not invalidate the registration because of them, in the absence of proof that the alleged errors, misstatements or omissions were based on fraud.

In sum: after considering each of Jewelex's contentions that Eyal's copyright registration is invalid, I conclude that they do not, singly or in combination, entitle Jewelex to summary judgment

based upon the invalidity of the registration in suit.

I now turn to the question of infringement.

**B.     Copyright Infringement**

Jewelex contends that even if the 584 registration were to be upheld, "summary judgment should be granted on Jewelex's counterclaim for a declaration of non-infringement because Jewelex did not have access to Eyal's Single Band Ring and the Jewelex Rings are not substantially similar to such ring."  Def.'s Br. at 20.

To establish infringement, the copyright owner must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d at 110.

Frequently, an action for copyright infringement begins with the plaintiff copyright owner's motion under Fed.R.Civ.P. Rule 65 to preliminarily enjoin the defendant's alleged infringement. Injunction being an equitable remedy, a district court sits as a court of equity, without a jury, and evaluates *inter alia* the likelihood of plaintiff's success after a full plenary trial on the core issues of copying, access, and substantial similarity.  The plaintiff's complaint and motion papers often constitute the first filings.  Expedited discovery and an evidentiary hearing commonly precede the court's order granting or denying a preliminary injunction.  In either event, a subsequent trial is at least conceptually possible.  The case at bar presents the quite different procedural context of defendant Jewelex's motion for a summary judgment of non-infringement, which if granted would result in the dismissal of Eyal's complaint without the jury trial both parties demand.

In *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 282 (S.D.N.Y. 2001), a copyright

infringement case cited by Jewelex, Judge Scheindlin said:

> Although the question of substantial similarity often raises questions of fact not appropriately resolved on a motion for summary judgment, noninfringement may be decided as a matter of law either when the similarity concerns only unprotectible elements of plaintiff's work, or when no reasonable trier of fact could find the works substantially similar.

Judge Scheindlin's analysis is a particular application to the law of copyright of that general standard of review for summary judgments set forth in Part III, *supra*, which applies to all issues of fact that may arise in an infringement action such as this one.

To prove actionable copying, a plaintiff must first show that plaintiff's work was actually copied. Under the Copyright Act, one may market a product identical to a copyrighted work so long as the second comer designed his product independently. A court may infer copying in the absence of direct evidence if the plaintiff demonstrates (a) substantial similarities between the two works; and (b) that the defendant had access to the copyrighted work. *Laureyssens v. Idea Group. Inc.*, 964 F.2d 131, 140 (2d Cir. 1992). In the determination of whether actual copying occurred, "substantial similarity" means similarity between protected and unprotected elements of the work being considered. Access may be inferred when a defendant had a reasonable opportunity to view the plaintiff's work before creating its own. *See Gaste v. Kaiserman*, 863 F.2d 1061, 1066-67 (2d Cir. 1988); *see also ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983). Access may be established if a copyrighted work has been published, or evidence is introduced showing that "a third party with whom both the plaintiff and the defendant were dealing had possession of plaintiff's work." 3 Nimmer, § 13.02[A] at 17-18. Access may also be inferred if the article alleged to infringe is strikingly similar to the copyrighted piece. *Id*.

In the case at bar, if Eyal's claim is not summarily disposed of by Jewelex's present motion and the case must be tried, a properly instructed jury as triers of the fact will be required to determine whether Eyal established actual copying of its work; whether Jewelex had access to Eyal's Single Band Ring; and whether substantial similarities exist between the protected elements of Eyal's work and Jewelex's productions warrant the conclusion that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 654 F.2d 204, 208 (2d Cir. 1981) (quoting *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966)).

1. Access

With respect to the access element, Eyal points out that Jewelex and Eyal sold their respective rings to the same customers–Fred Meyer and Whitehall. Eyal claims that Jewelex could have obtained the Eyal ring by visiting either Fred Meyer or Whitehall. In fact, Eyal claims that Adlakha "admitted that she went to Whitehall and other stores in 1998 to see what was selling and to do merchandising research." *See* Pl.'s Mem. in Opp'n at 27 (citing Adlakha Dep. at 26-27).

Eyal also claims that the Eyal Ring and the Jewelex rings are "strikingly similar" and therefore access may be inferred without the necessity of independent proof. *See Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) ("If the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.").

2. Substantial Similarity

The parties' briefs disagree on the applicable test in analyzing whether the jewelry designs in question are substantially similar. Jewelex urges that an evaluation of whether "substantial

similarity" exists between the Eyal Single Band Ring and Jewelex's allegedly infringing works requires one to utilize the "discerning ordinary observer" test articulated by the Second Circuit in *Folio Impressions v. Byer California*, 937 F.2d 759, 766 (2d Cir. 1991), and that the proper application of that test yields the conclusion that Jewelex's pieces are not substantially similar to Eyal's pieces as a matter of law.

However, as Eyal points out, the Second Circuit observed in *Hamil America, Inc. v. GFI*, 193 F.3d 92, 101-02 (2d Cir. 1999), that the application of the "more discerning" ordinary observer standard would appear to be the exception rather than the rule, and even where it is properly applied that standard does not demand that the constituent elements of a copyrighted work be parsed and considered separately:

> As we have subsequently cautioned, *Folio Impressions* featured "rather specialized facts" and provides no authority for the broad proposition that "in comparing designs for copyright infringement, we are required to dissect them into their separate components, and compare only those elements which are in themselves copyrightable."

(citing and quoting *Knitwares, Inc. v. Lollytags Ltd., Inc*., 71 F.3d 996, 1003 (2d Cir. 1995)).

As the Second Circuit further noted in *Knitwaves*, even the "more discerning" standard does not require a court (or a jury) to engage in the "mechanical" and "counterintuitive" exercise of considering each individual element of a copyrighted work separately, especially given that a work may be copyrightable even though it is entirely a compilation of unprotectible elements. 71 F.3d at 1003 (observing that "it is commonplace that in comparing works for infringement purposes -- whether we employ the traditional 'ordinary observer' test or the *Folio Impressions* 'more discerning' inquiry -- we examine the works' 'total concept and feel.'"; and adding that "differences in detail, while requiring considerable ink to describe, do little to lessen a viewer's overwhelming

impression that the two . . . sweaters are appropriations of the Knitwaves sweaters") (citing and quoting *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982)).

I have cited and quoted *supra* Judge Sweet's opinion in *Yurman Designs*, 93 F. Supp. 2d 449. Judge Sweet submitted the case to the jury, which returned verdicts for the plaintiff on its jewelry copyright infringement claim and its Lanham Act trade dress infringement and unfair competition claims. Judge Sweet entered judgment accordingly. On appeal, the Second Circuit affirmed the copyright infringement judgment but vacated the Lanham Act judgment, on the ground that plaintiff had not shown a protectible interest on that aspect of the case. *Knitwares* and *Hamil America* affirmed findings infringements of garment design copyrights after bench trials. The common thread among these cases is that the disputed issues of copying, access and substantial similarity were resolved by the triers of the facts (jury or court), not by the court on a motion for summary judgment.

To succeed on this motion, Jewelex bears the burden of showing that "no reasonable trier of fact" could find in Eyal's favor on the elements of its claims. *Torah Soft Ltd*, 136 F.Supp.2d at 282. Notwithstanding its conclusory assertions, Jewelex has not made that showing. These issues must be tried.

**C.    Timeliness of Eyal's Action**

Lastly, Jewelex moves for summary judgment on the ground that the 584 registration is not valid and enforceable with respect to the Eyal Single Band Ring "due to plaintiff's unreasonable delay in commencing this action." The consequence, Jewelex contends, is that Eyal "is bared [*sic*] by its laches and must be equitably estopped from pursuing this action." Def.'s Mem. at 26. These contentions are based on the undisputed facts that the Eyal Single Band

Ring has been on sale since 1999 and Jewelex has been selling the allegedly infringing rings since November 2000, over six years before Eyal filed the 584 registration.

Jewelex's main brief at 27 also cites, and seemingly relies upon, the limitation period contained in the Copyright Act, which provides in 17 U.S.C. §507(b): "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." "Under federal principles, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir 1987) (citations and internal quotation marks omitted). *Cullen* was not a copyright case, but its general principle applies when a claim for infringement accrues. Moreover, "[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief," although "[r]ecovery is allowed only for those acts occurring within three years of suit." *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992).

While Jewelex's briefs are not entirely clear, they appear to challenge the timeliness of Eyal's registration and filing of this action on the grounds of laches, equitable estoppel, and the statute of limitations, with primary emphases on laches and equitable estoppel. All three are affirmative defenses under Fed.R.Civ.P. 8(c)(1), and Jewelex would bear the burden of proving them at trial.

One must begin an analysis of the timeliness issue with the observation that the equitable doctrines of laches and equitable estoppel may be entirely inapplicable to Eyal's action, to the extent Eyal seeks to recover only damages at law. Laches is a creation of equity. Its essential elements are unreasonable delay by a plaintiff and resulting harm to the defendant. The customary function of laches is to determine the timeliness of an action where there is no applicable statute of limitations.

In the case at bar, the Copyright Act contains a three-year statute of limitations. The question that arises is whether that statute preempts such equitable defenses as laches and equitable estoppel in respect of claims for both money damages and injunctive relief. Second Circuit jurisprudence is not entirely clear on the point. In *Price v. Fox Entertainment Group, Inc.*, No. 05 Civ 5259, 2007 WL 241387 (S.D.N.Y. Jan. 26, 2007), Judge Scheindlin, after carefully reviewing the seemingly conflicting cases in the Second Circuit and this Court, concluded that "laches may not bar timely infringement claims, both legal and equitable, that do not involve ongoing infringement." *Id*. at *3. "Ongoing" or "continuing" infringement (the adjectives are used in *Price* as synonyms) means that "although the action was timely, because the last act of infringement occurred within the three-year period, the plaintiff had been on notice of its claim long beforehand due to previous acts of infringement that spanned many years." *Id*. If such facts are shown, *Price* and some of the cases it cites may be read to hold that laches would bar both legal and equitable claims.

However, I need not pursue these questions further because all three of Jewelex's affirmative defenses – laches, equitable estoppel and the statute of limitations – depend upon the same factual issues: When did Eyal first become aware of the existence of Jewelex's rings, and when should it have done so? Albert Kallati states in his declaration at ¶ 11 that he "first discovered that Jewelex placed its knock offs of the Eyal Ring in Fred Meyer in 2006. I was visiting the Fred Meyer corporate office to discuss sales and the decline of sales for the Eyal Ring n 2006 in Portland, Oregon." This is vital evidence on the questions of when Eyal's infringement action accrued (the statute of limitations issue) and Eyal's delay in filing its complaint (the laches issue). Eyal's brief at 32 argues from this Kallati's declaration: "Because Eyal became aware of the infringement in 2006 when it first saw the infringing rings on sale at Fred Meyer, and because Eyal had no reason

2006 when it first saw the infringing rings on sale at Fred Meyer, and because Eyal had no reason to know that Jewelex was infringing the Eyal Ring prior to 2006 (nor has Jewelex provided any reasonable basis for which Eyal should have known of the infringement prior to 2006), Eyal has timely brought this action prior to the three year statute of limitations, and is not barred by laches."

Jewelex offers no evidence to contradict Kallati's declaration. It says only that "[i]t defies belief that Eyal was ignorant of the alleged harm it suffered until 2006 since the Jewelex Rings have been on sale since the year 2000," Main Brief at 27, and "[i]t is abundantly clear that Eyal had to have known of the sales of the Jewelex Rings to Whitehall going back to 2000 since it is a ring that Eyal alleges is the same as and competes with Eyal's Ring and as it competed with Eyal's Ring in Fred Meyer," Reply Brief at 18. These assertions are intended to show that Kallati's declaration of pre-2006 ignorance is inherently unworthy of belief, given the surrounding commercial circumstances. Perhaps so: but it is for the jury to assess Kallati's credibility on this core question at trial, not for the Court on a motion for summary judgment.

## IV. CONCLUSION

Because there are genuine issues as to material facts on all aspects of the case, Jewelex's cross-motion for summary judgment is denied.

It is SO ORDERED.

Dated: New York, New York
September 17, 2008

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

31