UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/4/11____

-------------------------------------------------------------------- x

EYAL R.D. CORP.,

                               Plaintiff,

       -against-

JEWELEX NEW YORK LTD.,

                               Defendant.

-------------------------------------------------------------------- x

**MEMORANDUM OPINION
AND ORDER GRANTING
MOTION TO DISMISS**

07 Civ. 13 (AKH)

**ALVIN K. HELLERSTEIN, U.S.D.J.:**

       Defendant Jewelex New York Ltd. moves to dismiss all state-law claims alleged in a Second Amended Complaint filed by Plaintiff Eyal R.D. Corp., contending that the claims either are preempted by the Copyright Act or that they fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Jewelex's motion is granted.

       The following substantive facts are taken from Plaintiff Eyal's Second Amended Complaint and from previous decisions in this case. Eyal is a small, family-owned New York corporation that designs, manufactures, and sells jewelry. At issue in this case is one of its jewelry designs, the "Prinuette Trade Dress," which was created by its founder, Albert Kallati. The Prinuette Trade Dress consists of alternating princess cut and baguette cut diamonds set in alternating fashion within a half-channel setting. Eyal has fashioned a line of jewelry based on the Prinuette Trade Dress, which it has marketed, promoted and sold via its own website and through the catalogue of the Jewelry retailer Fred Meyer.

       In the Second Amended Complaint, Eyal alleges that "[d]ue to [its] exclusive and widespread use of . . . non-functional design features in connection with Jewelry, its Prinuette Trade Dress in the Prinuette product line has acquired enormous value and recognition in the

United States." Second Am. Compl. ¶ 10. Further, "[s]uch trade dress is well known to the consuming public and the trade as identifying and distinguishing [Eyal] as the exclusive and unique source of the products that are used in connection with such trade dress." Id. According to Eyal, Jewelex is liable under state law because it "regularly produces, manufactures, advertises, offers for sale and otherwise distributes, for commercial advantage and private financial gain, rings . . . by Jewelex . . . which use the Prinuette Trade Dress without permission, and thus infringe upon [Eyal's] trade dress." Second. Am. Compl. ¶ 11.

       The Second Amended Complaint alleges five claims. In Count 1, Eyal alleges without elaboration that Jewelex is liable for unfair competition under New York common law. In Count 2, Eyal alleges unjust enrichment, in that Jewelex has profited unfairly from its copying. In Count 3, Eyal alleges trade dress infringement under New York common law, in that Jewelex "has reproduced, copied and imitated the Prinuette Trade Dress in manufacturing the Jewelex Rings in a manner that is confusingly similar to the distinctive trade dress of Eyal." Second Am. Compl. ¶ 21. In Count 4, Eyal alleges that Jewelex has "dilute[d] the distinctive quality of [Eyal's] trade dress and all rights held thereunder," thereby causing injury to Eyal in violation of New York General Business Law § 360-l (McKinney 2011). And finally, in Count 5, Eyal alleges that Jewelex has committed deceptive acts and practices in violation of New York General Business Law § 349 (McKinney 2011).

       This case began in 2007 when Eyal filed No. 07 Civ. 13 in this Court, alleging a claim of copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq. Approximately two years later, Eyal filed a state-law complaint in Supreme Court, New York County, which Jewelex removed to this Court. That complaint, No. 09 Civ. 4940, was

2

coordinated with No. 07 Civ. 13; at some point, Eyal amended No. 09 Civ. 4940. Later, I ordered the two cases consolidated into the earlier filed case, No. 07 Civ. 13.

Early in this case, Jewelex moved for summary judgment to dismiss the copyright claim, which Judge Haight, the first judge to preside over these cases, denied. After I took over these cases, Jewelex again moved for summary judgment dismissing the copyright claim, and also moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the state-law claims in No. 09 Civ. 4940. After oral argument, and in a summary order, I denied Jewelex's renewed motion for summary judgment and granted its motion to dismiss, without prejudice to repleading. Order Denying Motion for Summary Judgment, Granting Judgment on the Pleadings, and Setting Conference, Eyal R.D. Corp. v. Jewelex New York Ltd., Inc., 09 Civ. 4940 (Doc. No. 18) (S.D.N.Y. Oct. 6, 2010). On November 30, 2010, Eyal filed its Second Amended Complaint, and Jewelex now moves again to dismiss, arguing that the claims either are preempted by the Copyright Act or that they fail to state a claim.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal upon a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must contain enough facts to state a claim to relief that is plausible on its face. A complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s] devoid of further factual enhancement." Id. (alteration in original) (internal quotations omitted).

3

The Copyright Act preempts a state law claim that protects "legal or equitable rights that are the equivalent to any of the exclusive rights within the general scope of copyright as specified." 17 U.S.C. § 301. At first, federal preemption of state intellectual property laws was broadly applied, completely prohibiting state protection against the copying of product shapes or configurations. See Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225 (1964) (finding federal patent law preempted state anti-copying law). Over the past decades, however, the Supreme Court and the lower courts retreated from this broad application of federal preemption. See 1 McCarthy on Trademarks and Unfair Competition § 7:56 (4th ed.). Under the modern approach, courts in this Circuit determine whether the Copyright Act preempts a state-law claim by using the "extra element" test:

> [i]f an "extra element" is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption.

Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992) (internal quotation omitted). The extra element must change the "nature of the action so that it is *qualitatively* different from a copyright infringement claim." Id. (citation omitted) (emphasis in original). However, "[a]n action will not be saved from preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature.'" Id. at 717.

### i.    Count 1 is Dismissed

Eyal contends that Count 1 of the Second Amended Complaint, alleging unfair competition under New York common law, is not preempted. In New York, "the essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." Jeffrey

4

Milstein v. Greger, Lawlor, Roth Inc., 58 F.3d 27, 34-35 (2d Cir. 1995) (citations and internal quotation marks omitted).  To recover for unfair competition, "a plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief," and must show that there was bad faith.  Id.  In order to avoid preemption, that which is claimed to be unfair competition must be something different from copying, or the fruits of copying, or the intent or bad faith that can be inferred from the act of copying; if the harm arises from the simple fact of copying, the claim falls within the Copyright Act and is preempted.  Computer Assocs., 982 F.2d at 717 (emphasis added) (collecting cases); see also Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 321-22 (S.D.N.Y. 2010).

　　　　Here, Eyal has pleaded—in a most conclusory fashion—that Jewelex's copying has created "a likelihood of confusion between [Eyal's] jewelry and [Jewelex's] jewelry." Second Am. Compl. ¶ 12.  The alleged "likelihood of confusion," arises only from Jewelex's alleged copying, and thus is preempted.  Computer Assocs., 982 F.2d at 717 ("[U]nfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted.").  The complaint does not allege, for instance, the efforts of a salesman or a company, by words or deeds, to deceive consumers into believing that accused merchandise is something else, a claim that might not be preempted because it would involve allegations beyond the scope of the Copyright Act.[1]  See 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 6:15 (4th ed.); see Samara Bros., Inc. v. Wal-Mart Stores, 165 F.3d 120

---

[1]"The terms 'palming off' or 'passing off' . . . refer to at least three different and distinct situations: (1) substitution of one brand of goods when another brand is ordered; (2) trademark infringement where the infringer intentionally meant to defraud and confuse buyers; and (3) trademark infringement where there is no proof of fraudulent intent, but there is a likelihood of confusion of buyers." 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:1 (4th ed.)

(2d Cir. 1998) (finding "actual confusion" to constitute an extra element). As pleaded, however, Eyal has simply attempted to dress up its claim that Jewelex has copied its design.

Eyal's unfair competition claim is also dismissed for failure to state a claim because Eyal, in its complaint, did not allege any facts to support the claim that Jewelex's actions were done in bad faith—again, apart from the copying itself—which is an element required to show unfair competition under New York common law. Milstein, 58 F.3d at 34-35. Count 1 is therefore dismissed.

### ii.    Count 2 is Dismissed

Count 2 of the Second Amended Complaint, alleging a claim of unjust enrichment under New York common law, is preempted by the Copyright Act. "The elements of an unjust enrichment claim in New York are that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). Here, Eyal's claim, based on the financial injury caused by Jewelex in "distributing, selling, promoting and/or otherwise exploiting the Eyal Ring, thereby reaping financial rewards without having to pay the costs required to design and market the ring," falls squarely within the ambit of § 106 of the Copyright Act, because it is simply alleging harms arising from Jewelex's alleged copying of the Eyal ring. Id.; see also Stadt, 719 F. Supp. 2d at 321-22; Orange County Choppers, Inc. v. Olaes Enterprises, Inc., 497 F. Supp.2d 541, 555-56 (S.D.N.Y. 2007).

### iii.    Count 3 is Dismissed

Count 3 of the Second Amended Complaint alleges a claim of trade dress infringement under New York common law. A product's trade dress is its "total image and overall appearance . . . as defined by its overall composition and design, including size, shape,

6

color, texture and graphics." Milstein, 58 F.3d at 31 (citations omitted).  In order to prevail in an

action for trade dress infringement in New York,[2] a plaintiff must prove (1) that its trade dress is

distinctive or has acquired secondary meaning; and (2) that a likelihood of confusion exists

between its product and the defendant's product.  Milstein, 58 F.3d at 31 (citing Two Pesos, Inc.

v. Taco Cabana, Inc., 505 U.S. 763, 769-70 (1992)) (quotation marks omitted).  Additionally, a

plaintiff must establish that the trade dress is not functional.  Id.

   In some circumstances, the elements of "likelihood of confusion" and "secondary

meaning" are considered extra elements that extend beyond the Copyright Act.  See Eliya, Inc. v.

Kohl's Dept. Stores, 06 Civ. 195, 2006 WL 2645196, at *5 (S.D.N.Y. Sept. 13, 2006); U-Neek,

Inc. v. Wal-Mart Stores, Inc., 147 F.Supp. 2d 158, 174 (S.D.N.Y. 2001).  But here, any

likelihood of confusion or secondary meaning issues would derive solely from Jewelex's

copying of Eyal's design.  In such a situation, where there is no allegation that Jewelex has

palmed off its own goods as Eyal's, there is no basis to find a basis of trade dress infringement

independent from the claim alleged under the Copyright Act.  See Sublime Prod., Inc. v. Gerber

Prod., Inc., 579 F. Supp. 248, 251 n.4 (S.D.N.Y. 1984); see also Gemveto Jewelry Co. v. Jeff

Cooper, Inc., 613 F. Supp. 1052, 1063-64 (S.D.N.Y. 1984) (Weinfeld, J.), vacated on other

grounds, 800 F.2d 256 (Fed Cir. 1986) (suggesting that where the claim is "predicated solely on

[defendant's] having copied plaintiff's jewelry designs," the claim could be preempted).  As

pleaded, the claim flows only from Jewelex's alleged copying, and it is thus preempted.

   Further, Eyal's Second Amended Complaint alleges no facts to support a

plausible inference that the Prinuette Trade Dress has acquired secondary meaning, or that it is

---

[2] The analysis for trade dress infringement, under both the Lanham Act and New York State common law, is the
same.  Sports Traveler, Inc. v. Advance Magazine Pubs, Inc., 25 F.Supp. 2d 154, 166-67 (S.D.N.Y. 1998).

distinctive.  Rather, Eyal has merely provided, in a most cursory way, "a formulaic recitation of

the elements of a cause of action," which is patently insufficient to support a claim.  Iqbal, 129

S.Ct. at 1949.

   iv.   **Count 4 is Dismissed**

   Count 4, alleging dilution of the distinctive quality of Eyal's trade dress in

violation of New York General Business Law § 360-l, is preempted.  This statute provides that a

"likelihood of . . . dilution of the distinctive quality of a mark or trade name shall be a ground for

injunctive relief . . . notwithstanding the absence of competition between the parties or the

absence of confusion as to the source of goods or services."  N.Y. Gen. Bus. Law § 360-l.  To

establish a dilution claim under section 360-l, a plaintiff must show "(1) that the trademark is

truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a

result of 'blurring' or 'tarnishment.'"[3]  U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F.Supp. 2d

158, 175 (S.D.N.Y. 2001).  Though generally speaking, a plaintiff may plead facts to make out

an independent claim under section 360-l, see Eliyah, 2006 WL 2645196, at *7, where a plaintiff

can only plead facts to allege harm from copying, a claim under section 360-l should be

considered preempted.  Count 4 is dismissed on that basis.

   Further, Count 4 is dismissed for failure to state a claim.  Eyal has alleged no facts

to support its allegation that "its Prinuette Trade Dress has acquired enormous value and

recognition in the United States" and that "[s]uch trade dress is well known to the consuming

---

[3]"Blurring occurs 'where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods
and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's
product'" New York Stock Exchange, Inc. v. New York, New York Hotel, LLC, 293 F.3d 550, 557 (2d Cir. 2002).
"Tarnishment occurs when a trademark is 'linked to products of shoddy quality, or is portrayed in an unwholesome
or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the
defendant's goods with the plaintiff's unrelated goods." Id. (citation omitted).

8

public and the trade as identifying and distinguishing [Eyal] as the exclusive and unique source of the products that are used in connection with such trade dress." Second Am. Compl. ¶ 10. This pleading, completely bereft of any factual allegations, is insufficient to state a plausible claim to relief. Iqbal, 129 S.Ct. at 1949.

### v.   Count 5 is Dismissed

Count 5 alleges that Jewelex's actions "constituted deceptive acts and practices directed at consumers in the conduct of their business," in violation of New York General Business Law § 349. As applied to this case, the claim is preempted. Eyal, again, has alleged harms arising only from Jewelex's alleged copying of its design, and thus asserts only a harm squarely covered by federal copyright law.[4]

Further, Count 5 is dismissed because Eyal has failed to state a claim. To establish a *prima facie* case for a claim of deceptive business practices under section 349, a plaintiff must allege that: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000). "[T]he gravamen of the complaint must be consumer injury or harm to the public interest." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) (internal quotation omitted). "Claims that arise out of a trademark infringement action, and disputes between competitions where the core of the claim is harm to another business as opposed to consumers, both constitute situations which

---

[4] Contrary to Eyal's contention, Samara Brothers, Inc. v. Wal-Mart Stores, Inc., 165 F.3d 120 (2d Cir. 1998), rev'd in part, 529 U.S. 205 (2000), does not compel a different result. In that case, Wal-Mart supplied Samara Brothers's designs to a contractor and had the contractor create clothing under a Wal-Mart label. The Second Circuit found that under the facts of the case, Samara Brothers could make out a claim under section 349 that was not preempted by copyright law. Id. at 131. Here, however, Eyal does not, and cannot, allege a harm from anything other than Jewelex's alleged copying of the Prinuette Trade Dress.

courts have found to reflect a public harm that is too insubstantial to satisfy the pleading

requirements of § 349." <u>Gucci America, Inc. v. Duty Free Apparel, Ltd.</u>, 277 F. Supp.2d 269,

272-73 (S.D.N.Y. 2003) (collecting cases). Here, Eyal pleads only an injury to itself, and not to

the public harm. This claim is dismissed as insufficiently pleaded. <u>Iqbal</u>, 129 S.Ct. at 1949.

       For the foregoing reasons, Jewelex's motion is granted. As Eyal has thrice

attempted to plead state-law claims, the dismissals are with prejudice. In No. 09 Civ. 4940, the

Clerk shall terminate the motion (Doc. No. 26). The Clerk shall further docket this order in No.

07 Civ. 13. Consistent with my previous Order, litigation shall henceforth proceed only in No.

07 Civ. 13. The parties shall appear for their previously scheduled conference on June 3, 2011.

       SO ORDERED.

Dated:      May _4_, 2011
             New York, New York

                                   ALVIN K. HELLERSTEIN
                                   United States District Judge

10